**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THURGOOD LINEBARGER,**

        **Plaintiff,**

      **v.**                        **Case No. 2:10-CV-176**
                                      **JUDGE SMITH**
                                      **MAGISTRATE JUDGE KING**

**HONDA OF AMERICA MFG, INC.,**

        **Defendant.**

**<u>OPINION AND ORDER</u>**

This matter is before the Court for consideration of the Plaintiff's *Motion for Protective Order*, Doc. No. 23.  For the reasons that follow, the motion is denied.

**I.**

Plaintiff, Thurgood Linebarger ["Plaintiff"], brings this action against his employer, Honda of America Mfg, Inc. ["HAM"], alleging violations of the Family and Medical Leave Act ["FMLA"], 29 U.S.C. § 2601, *et seq.*, the Employee Retirement Income Security Act ["ERISA"], 29 U.S.C. § 1140 and Ohio Revised Code § 4112.01.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

Plaintiff has been employed by HAM since 1988.  *Complaint*, Doc. No. 1, at ¶ 5.  In 1998, Plaintiff was diagnosed with "chronic high blood pressure, an irregular heartbeat, and circulatory issues,"  conditions that require prescription diuretic medication.  *Id.*, at ¶ 6.  From 1998 until early October 2009, Plaintiff took "extra bathroom breaks caused by the prescription

diuretic medications." *Id.*, at ¶ 9.  In the latter months of 2007, Plaintiff was disciplined "for taking bathroom breaks outside of his normal break times."  *Id.*, at ¶ ¶ 10, 11.  According to Plaintiff, he provided "updated information from [his] treating physician regarding [his] need for bathroom breaks" from October 2009 to January 2010.  *Id.*, at ¶ 12.

Plaintiff filed a Charge of Discrimination on December 24, 2009.  *Id.*, at ¶ 13.  On January 7, 2010, Plaintiff was suspended from employment pending an investigation.  *Id.*, at ¶ 15.  Plaintiff "walked out of the workplace" on that date.  *Id.*  Plaintiff's treating physician submitted a "Certification of Health Care Provider" explaining that Plaintiff required intermittent FMLA leave of 1/4 hour "per instance from 10-25 times per week for bathroom breaks necessitated by [Plaintiff's] diuretic medications. . . ."  *Id.*, at ¶ 17.   Plaintiff has been designated as on "continuous FMLA leave [since] January 7, 2010."  *Id.*, at ¶ 18.

Plaintiff alleges that HAM violated the FMLA by using his protected leave time as a "negative factor leading, at least in part, to Plaintiff being disciplined and eventually put off work on unpaid leave . . . ."  *Id.,* at ¶ 23.  Plaintiff also claims that HAM's actions are in violation of ERISA and amount to disability discrimination under Ohio law.  *Id.*, at ¶ ¶ 27-38.

The matter presently before the Court concerns Plaintiff's request for a protective order to permanently seal and bar the use of certain exhibits and portions of testimony elicited during his deposition.  Defendant opposes the motion.

## II.

Rule 26 of the Federal Rules of Civil Procedure provides that a person resisting discovery may move the court, for good cause shown, to issue an order protecting the person or party from "annoyance, embarrassment, oppression, or undue burden or expense. . . ."  Fed. R. Civ. P.

26(c)(1). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001), citing *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973). "To show good cause, a movant for protective order must articulate specific facts showing a 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.*, quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D. D.C. 1987). Ultimately, the grant or denial of protective orders falls within the "broad discretion of the district court managing the case." *Century Prod., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988).

In addition, the party seeking a protective order must certify that it "has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). This prerequisite has been met.

### III.

In this case, Plaintiff seeks a protective order barring Defendant's use of certain portions of Plaintiff's deposition testimony as well as certain communications between counsel. Before addressing the merits of this request, the Court will discuss the facts that form the subject of Plaintiff's motion.

As noted above, in November 2009, Plaintiff was "disciplined" for allegedly taking excessive bathroom breaks. According to Ms. Laurie Oswald, a HAM Human Resources Department representative, Plaintiff had been "counseled"[1] in September 2009 regarding the "excessive time he was spending away from the assembly line." *Affidavit of Laurie Oswald*, at ¶

---

[1]Plaintiff refers to this counseling as a form of discipline.

5, attached as Exhibit to Defendant's *Memorandum contra*, Doc. No. 30.  Ms. Oswald avers that

Plaintiff was uncooperative and insisted that his lunch and other regular breaks were "his time"

and that he would not "strain himself" to use the restroom during these times.  *Id.*  Plaintiff was

"counseled" again in November and in December 2009.  Plaintiff's physician had submitted a

note to HAM in November 2009 indicating that Plaintiff needed bathroom privileges four times

per shift.  *Affidavit of Steva Dye*, at ¶ 3, attached as Exhibit, *id.*  Ms. Dye, a nurse for HAM,

sought clarification from Plaintiff's physician since Plaintiff was already receiving five breaks

per shift.  *Id.*  Plaintiff's physician allegedly failed to respond to that request for clarification.

*Id.*, at ¶ 4.  Ms. Dye sent a letter to Plaintiff's physician on December 21, 2009, again seeking

clarification.  *Id.*  On January 5, 2010, Plaintiff's physician responded that "he could not

determine how often [Plaintiff] would need to go to the restroom . . . ."  *Id.*, at ¶ 5.  Plaintiff was

placed on indefinite leave of absence on January 7, 2010 after HAM concluded that it could not

"accommodate limitless restroom use and because [Plaintiff] continually exceeded the

reasonable accommodation Honda provided to [Plaintiff]. . . ."  *Oswald Affidavit,*  at ¶ 7.

On May 5, 2010, after this lawsuit was filed, Ms. Dye sent Plaintiff a letter proposing a

new accommodation.  *Id.*, at ¶ 6.  In particular, HAM would continue to provide Plaintiff two

restroom breaks in addition to his three scheduled breaks, and HAM would supply Plaintiff with

an incontinence product such as DEPEND® in the event of an emergency.  *Id.*  Plaintiff did not

respond to that letter.  Counsel for HAM then spoke with Plaintiff's counsel and sent an e-mail

to Plaintiff's counsel on May 25, 2010, outlining this proposed accommodation.  Exhibit 30,

attached to *Plaintiff's Deposition* (filed under seal).  Plaintiff's counsel responded to this e-mail,

indicating that Plaintiff would be agreeable to use his scheduled breaks for restroom use so as to

limit the need for additional unscheduled breaks to four. Plaintiff's counsel also suggested the possibility of transferring Plaintiff to a job that could more easily accommodate four unscheduled breaks during a shift. Exhibit 31, *id.*

On July 20, 2010, counsel for HAM sent an e-mail to Plaintiff's counsel proposing that Plaintiff return to work with the accommodation of two, rather than four additional unscheduled breaks. According to HAM's counsel, Plaintiff's proposed accommodation was not supported by medical evidence. Exhibit 33, *id.* In response, Plaintiff's counsel indicated that Plaintiff's demand was unchanged. *Id.*

Following the depositions of Plaintiff's treating physician, Dr. May, and of Dr. Hallet, a urologist who hadevaluated Plaintiff, Ms. Dye again proposed that Plaintiff return to work with the accommodation of two restroom breaks in addition to the three scheduled breaks. *Dye Affidavit*, at ¶ 8, attached as Exhibit to Defendant's *Memorandum contra.* Plaintiff made no response to that letter.

During Plaintiff's deposition, counsel for HAM sought to elicit testimony regarding the foregoing proposals for Plaintiff to return to work "to ascertain why Plaintiff had not responded to Honda's multiple offers to come back to work and at least try the proposed accommodation." *Defendant's Memorandum contra*, at 8. In a further attempt to elicit a response from Plaintiff, Defendant propounded Requests for Admission to establish the factual foundation regarding the communications between counsel regarding the proposed accommodations. *See Requests for Admissions*, attached to Plaintiff's *Supplement to Motion for Protective Order*, Doc. No. 24. It is these attempts that Plaintiff contends should be the subject of a protective order.

According to Plaintiff, the communications regarding the proposed accommodation for

Plaintiff's return to work constitute settlement discussions that fall within the scope of Fed. R.

Evid. 408. Defendant disagrees and argues that the communications show the parties engaged

in the interactive process required by a regulation promulgated in connection with the Americans

with Disabilities Act ["ADA"], 42 U.S.C. § 12101, *et seq.*[2] Defendant also argues that a

protective order is not appropriate because Rule 26 does not provide a basis for the preclusion of

evidence that may be relevant at trial.

> Rule 408 provides, in relevant part:

> **(a) Prohibited uses.** Evidence of the following is not admissible on behalf of any
> party, when offered to prove liability for, invalidity of, or amount of a claim that
> was disputed as to validity or amount, or to impeach through a prior inconsistent
> statement or contradiction:
> (1) furnishing or offering or promising to furnish – or accepting or offering or
> promising to accept – a valuable consideration in compromising or attempting to
> compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim . .
> . .

Fed. R. Evid. 408. As the United States Court of Appeals for the Sixth Circuit has explained,

Rule 408 serves three purposes: First, the rule promotes the resolution of disputes short of

litigation, recognizing that "settlements are more likely to result when parties are free to speak

openly during settlement negotiations, without fear that what is said can be used against them at

trial." Second, the rule seeks to exclude irrelevant evidence, recognizing that "disputes are often

---

[2]This regulation states:
> To determine the appropriate reasonable accommodation it may be necessary for
> the [employer] to initiate an informal, interactive process with the individual
> with a disability in need of the accommodation. This process should identify the
> precise limitations resulting from the disability and potential reasonable
> accommodations that could overcome those limitations.
29 C.F.R. § 1630.2(o)(3).

6

settled for reasons having nothing to do with the merits of a claim." Third, the rule attempts to exclude unreliable evidence since "settlement negotiations are typically punctuated with numerous instances of puffing and posturing and . . . could very well not be the sort of evidence which the parties would otherwise contend to be wholly true." *Eid v. Saint-Gobain Abrasives, Inc.*, 377 Fed. Appx. 438, 444 (6th Cir. 2010) (citations omitted).

As noted *supra,* Plaintiff argues that the communications regarding the possibility of Plaintiff's return to work constitute communications in furtherance of settlement.  According to Plaintiff, because a possible remedy for violation of the FMLA is reinstatement and accommodation of disability, "once the lawsuit was filed it [became] illogical for Honda to be allowed to take the position that communications regarding the resolution of issues that impact upon possible remedies in the lawsuit are anything but discussions regarding compromise of claims in the case."  *Plaintiff's Motion for Protective Order*, at 6.  Plaintiff takes the position that HAM caused a breakdown of the interactive process on January 8, 2010 and the process was not thereafter reopened.

Defendant disagrees and argues that its communications with Plaintiff's counsel were part of the interactive process required by the federal regulation.  As Defendant points out, evidence regarding the interactive process is relevant to a claim of disability discrimination.  *See Kleiber v. Honda of America Mfg, Inc.*, 485 F.3d 862 (6th Cir. 2007).  According to Defendant, "[a]n employee cannot evade [the obligation to engage in the interactive process] by filing a lawsuit, ignore attempts by the employer to continue to discuss a reasonable accommodation, and assert that offers of a reasonable accommodation made through the employer's counsel are inadmissible."  *Defendant's Memorandum contra*, at 13.

In the Court's view, the communications between counsel in this case do not fall within the scope of Rule 408.  In reviewing the chain of communication, it is clear that the proposals for accommodation were not made in the context of discussing potential settlement of the claims asserted in this litigation but, rather, were made in an effort to determine the number of bathroom breaks that would be feasible to accommodate Plaintiff's condition.  The Court finds no basis for permanently sealing and barring the use of those portions of deposition testimony and exhibits related to the discussions of a possible accommodation of Plaintiff's condition.

The ultimate relevance of evidence regarding possible accommodations to any claim or defense in this case will be for the District Judge to determine at a later stage.  There is, at this point, simply no basis upon which to permanently seal or bar this evidence from consideration. For these reasons, the request for a protective order is denied. Similarly,  Defendant's *Memorandum contra* and Plaintiff's deposition will be unsealed.

### IV.

**WHEREUPON**, Plaintiff's *Motion for Protective Order*, **Doc. No. 23**, is **DENIED**.  The Clerk is **DIRECTED** to unseal Doc. Nos. 30 and 31.

July 11, 2011                                    ___*S/ Norah McCann King*___
DATE                                              NORAH McCANN KING
                                                      UNITED STATES MAGISTRATE JUDGE