**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**THURGOOD LINEBARGER,**

      **Plaintiff,**

                                  **Case No. 2:10-cv-176**
                                  **Judge Smith**

**v.**                                  **Magistrate Judge Preston Deavers**

**HONDA OF AMERICA MFG., INC.,**

      **Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant Honda of America Mfg., Inc.'s Motion for Summary Judgment (Doc. 49). This motion is fully briefed and ripe for disposition. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**I.    Background**

Plaintiff Thurgood Linebarger has worked for Defendant as a Production Associate at Defendant's Marysville, Ohio, automobile assembly plant since 1988. As a Production Associate, Plaintiff worked on a continually moving assembly line. Each Production Associate performs certain job processes on the assembly line, and each worker's ability to perform the assigned job processes is dependant on those before him properly completing their job processes. Therefore, when an assembly line worker leaves the moving line, such as to use the restroom, someone must step in and perform his job processes. Finding a replacement is the responsibility of the Team Leader, who either finds an associate to complete the job processes or completes them himself.

Defendant provides breaks to Production Associates during production. Plaintiff worked

on the first shift, which begins at 6:30 a.m.  At 8:30 a.m., all Production Associates take a ten-minute morning break.  Two hours later, from 10:30 a.m. to 11:00 a.m., the associates take a thirty-minute lunch break.  At 1:00 p.m., there is another ten-minute break.  The first shift ends at 3:00 p.m.  Restrooms for associates at the Marysville facility are located in the associate locker rooms, near the lunchroom, and near the production floor.  Plaintiff estimates that it takes approximately one minute to walk from his assigned production area to the nearest restroom.

Plaintiff was diagnosed with high blood pressure, or hypertension, in 1991.  He takes medication for this condition.  The medical evidence indicates that he needs to urinate more frequently than the average person because of this medication.  This increased frequency in his need to urinate has created issues from Defendant's perspective because of the nature of Plaintiff's assembly line work.  Throughout the years of Plaintiff's employment with Defendant, Defendant has expressed its concerns to Plaintiff regarding the frequency he needs to use the restroom.  In 1999, Plaintiff attended an independent medical examination conducted by a urologist, Dr. Paul Martin, who found no medical abnormality that would explain or require an increased need to use the restroom.  Dr. Martin did find, however, that the diuretic taken by Plaintiff could require an additional one or two breaks during the work day.  Dr. Martin also determined that Plaintiff could wait for a reasonable amount of time to be replaced on the line before using the restroom.  Based on Dr. Martin's assessment, Defendant accommodated Plaintiff with two additional paid breaks per shift of up to ten minutes per break.

In 2000, 2006, and 2008, Plaintiff was counseled regarding excessive restroom breaks and at least one situation involving Plaintiff leaving his assigned position without getting a replacement, which caused five vehicles to pass without his assigned assembly processes being

2

completed.  Then, in late 2009, management formally met with Plaintiff to discuss their displeasure with the situation, in an attempt to get Plaintiff to limit his breaks to the regularly scheduled breaks and the two additional breaks.  Plaintiff indicated to management that he would not proactively empty his bladder, as he would only use the restroom during breaks if he felt the physical urge to urinate.

In November 2009, Plaintiff submitted to Defendant a note from his treating physician, Dr. Charles May, that stated that he "suffers from urinary frequency as a result of the diuretic used to treat his hypertension" and therefore he needs "bathroom privileges 4 times per shift due to urinary frequency."  (Doc. 49-3).  Because Defendant was already providing Plaintiff with five opportunities to use the restroom (two accommodation breaks in addition to the three regularly-scheduled breaks), Steva Dye, a registered nurse employed by Defendant, contacted Dr. May to seek clarification.  Dr. May responded by essentially stating, in part, that Plaintiff needs restroom breaks when he has the urge to urinate, and that he has a need to urinate more frequently because of his medications necessary for treatment of his hypertension.

Ms. Dye interpreted Dr. May's response as opining that Plaintiff should be permitted to leave the assembly line whenever he felt the urge to urinate, on an unlimited basis.  Doug Bigler, the head of Defendant's Restriction Placement Department, determined that a request for unlimited restroom breaks would require another associate to perform Plaintiff's job duties whenever he leaves for the restroom and could not reasonably be accommodated considering all of Defendant's Production Associate positions are tied directly to the production line.  Consequently, Defendant placed Plaintiff on medical leave of absence.  Defendant informed Plaintiff that he could return to work when he is able to meet the accommodation offered by it.

3

On February 25, 2010, Plaintiff initiated this action against Defendant.  Plaintiff alleges that Defendant discriminated against him on the basis of his disability in violation of Ohio law, that Defendant's actions violate the Family and Medical Leave Act ("FMLA"), and that Defendant violated the Employee Retirement Income Security Act ("ERISA").

After Plaintiff initiated this lawsuit, Ms. Dye sent a letter to Plaintiff offering to make an incontinence product such as DEPEND® for men available to him at work.  Ms. Dye further indicated in the letter that Defendant viewed the availability of an incontinence product, in conjunction with the two additional breaks, as an effective accommodation to his alleged disability.  Plaintiff did not return to work to try this proposed accommodation.  A few weeks later, Defendant's counsel sent an email to Plaintiff's counsel reiterating Defendant's proposed accommodation.  The email clarifies that Defendant was willing to provide the incontinence product, and permit Plaintiff to have two additional breaks, as an accommodation, provided Plaintiff agreed to use the restroom during the three regularly scheduled breaks.

Plaintiff's counsel sent an email to Defendant rejecting the accommodation.  The email indicates that Plaintiff would agree to four additional unscheduled breaks, and that the incontinence product would be inappropriate for someone like him who suffers from a frequent need to urinate, and not incontinence.  The email further indicates that Plaintiff would agree to use his scheduled breaks to urinate as much as possible in order to reduce the need for unscheduled breaks to four per shift.

Defendant's counsel again emailed Plaintiff's counsel regarding the accommodation issue. The email rejected Plaintiff's proposed accommodation, stating that there is no medical basis to support the position that Plaintiff needs four unscheduled restroom breaks, in addition to the three

4

regularly scheduled breaks. The email also reiterated Defendant's position on the reasonableness of its proposed accommodation, which had not changed. Plaintiff's counsel responded to this email, stating that Plaintiff would use the scheduled breaks to urinate as much as possible, but that he would still need four additional breaks.

On January 27, 2011, Dr. May testified that the use of an incontinence product by Plaintiff is unnecessary and inappropriate because he does not have incontinence, just a need to urinate more frequently due to the medications. Dr. May also testified, however, that Defendant's proposal, which would provide five opportunities for Plaintiff to use the restroom during a shift, would be reasonable based on his treatment and understanding of Plaintiff's condition.

In February 2011, Defendant engaged a board-certified urologist, Dr. Michael B. Hallet, to evaluate Plaintiff and his medical situation. In a report dated February 21, 2011, Dr. Hallet concluded that Defendant was providing Plaintiff with a sufficient number of breaks in order to urinate. Dr. Hallet also opined that Plaintiff's frequency problem at work would be largely eliminated if he adjusted the time of day he took his diuretic medication.

On March 10, 2011, Ms. Dye sent another letter to Plaintiff urging him to attempt to return to work under the accommodation previously outlined by Defendant – the three scheduled breaks in addition to two unscheduled breaks. Plaintiff did not respond to this letter, but later called Defendant. In response to this call, Ms. Dye sent another letter to Plaintiff on November 4, 2011, informing him that Defendant's position remained the same regarding the proposed accommodation. Ms. Dye encouraged Plaintiff to return to work and try the proposed accommodation, but Plaintiff did not return to work.

On November 8, 2011, Plaintiff submitted a certification form signed by Dr. May which

provides that he is incapacitated from daily activities due to "hypertension" and "urinary frequency" for approximately 15 minutes, 10 to 25 times per week. On November 28, 2011, Ms. Dye sent another letter to Plaintiff stating Defendant's position that the accommodation it had been offering satisfied and exceeds Dr. May's requested accommodation. As of December 15, 2011, Plaintiff had not responded to this letter or returned to work.

Defendant moves for summary judgment on all claims. This motion is briefed and ripe for disposition.

## II.    Summary Judgment Standard

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party.

*Matsushita*, 475 U.S. at 587.  The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53.  Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978).  The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257).  The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish

7

that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80.  That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.    Discussion

Plaintiff asserts claims of disability discrimination in violation of Ohio law, violation of the FMLA, and violation of ERISA.  These claims will be discussed in turn.

### A.    Disability Discrimination

Plaintiff's Complaint alleges that Defendant "discriminated against Plaintiff by failing to reasonably accommodate Plaintiff with the necessary bathroom breaks outside of his normal break times caused by treatment of Plaintiff's condition," and that Defendant "discriminated against Plaintiff by putting him off of work without pay in retaliation for Plaintiff's filing of a Charge of Discrimination with the OCRC."  (Compl., ¶¶35-36).

#### 1.    Failure to Accommodate

Ohio Revised Code § 4112.02 prohibits employers from discriminating against any person with respect to the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," on the basis of that person's disability.  Ohio Rev. Code § 4112.02(A).

In order to establish a *prima facie* case of disability discrimination under the Americans with Disabilities Act ("ADA") for failure to accommodate, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his

disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *Myers v. Cuyahoga Cnty.*, 182 F. App'x 510, 515 (6th Cir. 2006) (citing *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). Discrimination claims brought under Ohio law are analyzed in the same manner as discrimination claims brought under federal law. *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir. 2004); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Oh. Civil Rights Comm'n*, 421 N.E.2d 128, 131-32 (Ohio 1981).

Defendant argues that Plaintiff is not disabled within the meaning of the ADA, and that, even if he is considered disabled, it has provided a reasonable accommodation. Defendant also argues that Plaintiff caused a breakdown in the interactive process of determining an appropriate accommodation by refusing to try to abide by the accommodation offered by Defendant. Plaintiff argues that he is disabled within the meaning of the ADA, that he was qualified for the job he was working with a reasonable accommodation, that Defendant unreasonably denied his request for restroom breaks as needed, that Defendant ended the interactive process by placing him on medical leave, that the Court should not consider Defendant's alleged attempt to continue the interactive process after the filing of the lawsuit, that Defendant's proposal that he wear an incontinence product was inappropriate, and that allowing him to take bathroom breaks as needed does not pose an undue hardship to Defendant.

Plaintiff's claim that Defendant discriminated against him by failing to accommodate his purported disability fails for the simple reason that, even assuming Plaintiff meets the definition of disability under the ADA, Defendant provided Plaintiff with a reasonable accommodation for his condition. In a reasonable accommodation challenge, the plaintiff "bears the initial burden of

proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 870 (6th Cir. 2007).  In order for accommodations to be reasonable, the plaintiff must point to some evidence to demonstrate that the same were "necessary accommodations in light of her physical limitations."  *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 557 (6th Cir. 2008).  Here, Plaintiff fails to present evidence showing that Defendant failed to provide a necessary accommodation in light of his physical limitations.

Plaintiff has presented evidence showing that the medication he takes for his hypertension requires him to use the restroom more frequently than would be the case if he did not take the medication.  Plaintiff alleges that Defendant has not provided a reasonable accommodation for this circumstance.  The evidence does not support this allegation.  Dr. May, Plaintiff's treating physician, testified that Plaintiff needs to urinate 10-25 times per week at work due to his medical situation.  But Defendant's proposed accommodation would permit Plaintiff to urinate five times during his shift, at three regularly scheduled breaks plus two unscheduled breaks.  Therefore, under Defendant's proposed accommodation, Plaintiff would have the opportunity to urinate 25 times at work during a five-day workweek, which is consistent with Plaintiff's treating physician's assessment.

Furthermore, there is no medical evidence indicating that if Plaintiff proactively (even if he did not feel the urge to urinate)[1] emptied his bladder at every one of the five breaks that would be provided to him under Defendant's proposed accommodation, he would need additional breaks as

---

[1] There is no medical evidence that Plaintiff is unable to empty his bladder if he does not have the "urge" to go to the restroom.

10

an accommodation.  Dr. May has testified that Plaintiff should be able to go to the restroom "as

needed," or when he has "the urge to urinate."  (May Dep., pp. 52-53).  But he also clarified that

generally all persons should be able to go to the restroom whenever they feel the urge to do so.

Thus, Dr. May's opinion that Plaintiff should be able to go to the restroom when he has the urge

to urinate is consistent with his opinion that this rule should apply to all persons, demonstrating

that Plaintiff is not unique in this sense.  Similarly, Dr. May testified that Plaintiff does not have an

incontinence problem, and that any proposal to have Plaintiff wear an incontinence product would

be completely inappropriate.  In view of this evidence, one could conclude that Plaintiff has

reasonable physical control over the emptying of his bladder.

In the final analysis, no jury could reasonably conclude that Defendant failed to provide a

reasonable accommodation for Plaintiff's condition.

Moreover, the Court notes that Plaintiff's argument that Defendant caused a breakdown in

the interactive process is untenable.  Defendant placed Plaintiff on medical leave in January 2010

in response to Dr. May's statement that Plaintiff should be permitted to take a restroom break

whenever he had the urge to urinate.  After Plaintiff was placed on medical leave, Defendant

continued to engage in the interactive process in an effort to find a solution to the problem of

Plaintiff needing to take unscheduled breaks during production on the assembly line.  During this

process, Defendant set forth the proposed accommodation allowing Plaintiff to take the two

unscheduled breaks, with the understanding that Plaintiff would empty his bladder at all available

breaks.[2]  Defendant also indicated that it would provide an incontinence product to Plaintiff if

---

[2] The Court is not persuaded by Plaintiff's argument that interactions between counsel
regarding accommodations are not admissible evidence in view of Federal Rule of Evidence 408,
which generally prohibits the introduction of evidence regarding offers of compromise or

needed.  As to the offer to provide the incontinence product, Plaintiff strenuously argues that he is not incontinent and his physician stated that it would be medical inappropriate for him to wear such a product.  Even so, Defendant was not proposing to require Plaintiff to wear such a product, but was reasonably attempting to find an amicable solution to the issue.

To the extent there was a breakdown in the interactive process, it was not caused by Defendant failing to act in good faith.  Defendant repeatedly communicated with Plaintiff regarding his restrictions, and it developed accommodations that were reasonably consistent with the medical evidence that Plaintiff had submitted, including his treating physician's assessment of his limitations.[3]  There is no evidence, however, that Plaintiff attempted to limit his breaks to the five provided, by proactively emptying his bladder, or at least attempting to empty his bladder, at every provided break.  In other words, Plaintiff did not give the facially reasonable accommodation proposal a chance, which is fatal to his failure to accommodate claim.  *See Turner v. Fleming Companies*, No. 98-5065, 1999 WL 68580 (6th Cir. 1999) (unpublished table decision) (holding that the plaintiff could not hold out for the accommodation he preferred despite being offered a facially reasonable accommodation).

### 2. Retaliation

Plaintiff has abandoned his claim that Defendant retaliated against him for filing a charge

---

settlement, as these communications were made in an effort to reach a consensus on a reasonable accommodation.

[3] The Court makes no finding as to the significance of Defendant's offer of providing an incontinence product, because even if such a product was unnecessary and Plaintiff thus refused to use such a product, Defendant's offer to increase Plaintiff's breaks during a shift to five, provided that Plaintiff proactively emptied his bladder at every break, was facially reasonable under the circumstances.

of discrimination.  Plaintiff argues, however, that Defendant exhibited unreasonable animus toward him due to his request for a reasonable accommodation.  To establish a *prima facie* case of retaliation under Ohio law, a plaintiff is required to demonstrate that: (1) he engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action.  *Lockett v. Marsh USA, Inc.*, 354 F. App'x 984, 997 (6th Cir. 2009) (citing *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007)).

The Court finds as unpersuasive Plaintiff's argument that Defendant retaliated against him because he requested accommodations for his condition.  To support this argument, Plaintiff asserts that Defendant has exaggerated negative facts relating to his requests to take restroom breaks and the disruption these requests caused.  Plaintiff argues that Defendant's animus toward him culminated in him being placed on medical leave.  Plaintiff's argument is largely based on speculation, insofar as he attributes Defendant's decision to place him on medical leave to animosity toward him.  The undisputed facts demonstrate that Defendant placed Plaintiff on medical leave based on its determinations that Plaintiff was effectively requesting unlimited restroom breaks, and that this circumstance could not be accommodated.  To attribute this decision to animosity is simply not based on evidence or fact.

### B.    FMLA[4]

_____

[4] In response to Defendant's Motion for Summary Judgment, Plaintiff filed a response in opposition to the motion and a purported "Cross-Motion for Partial Summary Judgment for Liability on his Claim that Defendant Violated the Family Medical Leave Act."  (Doc. 50).  While Plaintiff purports to move for summary judgment in his favor on his FMLA claim, there are three problems with his motion.  First, the motion was filed beyond the agreed upon deadline to file any

The FMLA provides that it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter," 29 U.S.C. § 2615(a)(1), and that it is "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).  Thus, an employer may not interfere with an employee's FMLA rights or retaliate against an employee for taking FMLA leave.  *Hunter v. Valley View Local Schools*, 579 F.3d 688, 690 (6th Cir. 2009); *see Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (recognizing that subsections (a)(1) and (a)(2) of 29 U.S.C. § 2612 establish two distinct theories of recovery under the FMLA: those of entitlement (interference) and of retaliation).

Plaintiff asserts claims under the FMLA for interference and retaliation.  Plaintiff alleges that Defendant violated the FMLA by (1) not designating his unscheduled restroom breaks as FMLA leave time, (2) not allowing those breaks, and (3) for penalizing him for taking those breaks.  Defendant argues that Plaintiff's FMLA claim fails because his increased urination frequency condition does not constitute a "serious health condition" that renders him "incapacitated," and therefore he was not entitled to FMLA leave.

### 1.    Interference

To establish an interference claim under the FMLA, Plaintiff must prove that: (1) he is an "eligible employee,"(2) Defendant is an "employer," (3) he was entitled to leave under the FMLA,

---

dispositive motions (*see* Doc. 48).  Second, Plaintiff does not present any substantive argument for why he is entitled to summary judgment on this claim.  And finally, notwithstanding these issues, this motion is meritless because Defendant is entitled to summary judgment on this claim for reasons expressed herein.

(4) he gave Defendant notice of his intention to take leave, and (5) Defendant denied him the

FMLA benefits to which he was entitled. *See Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 720

(6th Cir. 2003). A precondition to bringing either an interference or retaliation cause of action is

the requirement that the plaintiff suffer from a serious health condition that renders him unable to

perform his job. *Id.* (citing 29 U.S.C. § 2612). Whether an illness qualifies as a serious health

condition under the FMLA is a legal question which this Court must determine. *Madoffe v.*

*Safelite Solutions, LLC*, No. 2:06-cv-771, 2008 WL 755182 (S.D. Ohio Mar. 21, 2008) (Frost,

J.).

   The FMLA entitles a qualifying employee to up to twelve weeks of unpaid leave each year

if, among other things, the employee has a "serious health condition that makes the employee

unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

A "serious health condition," is defined as "an illness, injury, impairment, or physical or mental

condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility;

or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

   A serious health condition involving continuing treatment by a health care provider

includes any "period of incapacity or treatment for such incapacity due to a chronic serious health

condition." 29 C.F.R. § 825.115(c). The term "incapacity" means "inability to work, attend

school or perform other regular daily activities due to the serious health condition, treatment

therefore, or recovery therefrom." 29 C.F.R. § 825.113(b). A "chronic serious health condition

is one which: (1) Requires periodic visits (defined as at least twice a year) for treatment by a

health care provider . . . , (2) Continues over an extended period of time (including recurring

episodes of a single underlying condition); and (3) May cause episodic rather than a continuing

period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.115(c).

Incapacitation for the purposes of the FMLA "does not mean that, in the employee's own

judgment, he or she should not work, or even that it was uncomfortable or inconvenient for the

employee to have to work.  Rather, it means that a 'health care provider' has determined that, in

his or her professional medical judgment, the employee cannot work (or could not have worked)

because of the illness." *Alston v. Sofa Express, Inc.*, Case No. 2:06-cv-0491, 2007 WL 3071662,

*8 (S.D. Ohio Oct. 19, 2007) (Graham, J.) (quoting *Olsen v. Ohio Edison Co.*, 979 F. Supp.

1159, 1166 (N.D. Ohio 1997)).

  Title 29 U.S.C. § 2612(b) provides that an employee that meets the requirement of

Section 2612(a)(1)(D) may be entitled to FMLA leave "intermittently or on a reduced leave

schedule when medically necessary."  The corresponding regulations define "intermittent leave"

as:

> leave taken in separate periods of time due to a single illness or injury, rather than
> for one continuous period of time, and may include leave of periods from an hour
> or more to several weeks.  Examples of intermittent leave would include leave
> taken on an occasional basis for medical appointments, or leave taken several days
> at a time spread over a period of six months, such as for chemotherapy.

29 C.F.R. § 825.800.  For "intermittent leave" for a medical need to be appropriate, "it must be

that such medical need can be best accommodated through an intermittent or reduced leave

schedule." 29 C.F.R. § 825.202(b).

  Plaintiff asserts that he suffers from severe chronic high blood pressure.  As part of his

treatment for this condition, he takes prescription medication that increases the frequency in

which he needs to urinate.  In connection with that increased frequency, Plaintiff requested more

breaks than Defendant is willing to provide.  Plaintiff contends that his requests for unscheduled

breaks should be considered FMLA intermittent leave time.  In support of his arguments, Plaintiff cites *Collins v. U.S. Playing Card Co.*, 466 F. Supp.2d 954 (S.D. Ohio Nov. 6, 2006) (Dlott, J.), which involved a diabetic employee who sought intermittent leave under the FMLA for snack breaks to help control his blood sugar level and avoid passing out.  *Id.* at 967.  In *Collins*, the court resolved that, when medically necessary, an employee may be entitled to "intermittent leaves of only a few minutes in duration."  *Id.* at 966.

Plaintiff's arguments are unpersuasive as Plaintiff's asserted need to frequently use the restroom during his shift on the assembly line does not render him "incapacitated" under the FMLA.  When a person takes a break from work or other daily activity to perform the necessary bodily function of urinating, that does not render the person "incapacitated" during the break.  Thus, the need to urinate is obviously not a serious health condition.  Moreover, the need to urinate more frequently does not in itself transform this need to a serious health condition – it just means the person must take more breaks from daily activities or work.  At its core, this increase in frequency creates an inconvenience that can become problematic at work, especially when the nature of the employment position generally requires the worker's continual presence at a certain location, such as along an assembly line.

In this case, Plaintiff is medically able to be present at work, but he seeks to take more breaks than permitted by his employer.  There is no evidence that Plaintiff cannot perform the essential functions of his job despite his condition.  Thus, Plaintiff's request to take restroom breaks beyond the number medically necessary is merely a matter of convenience.  Furthermore, this case is distinguishable from *Collins* because there was evidence in that case that the snack breaks were medically necessary to keep the employee from passing out, or becoming

17

incapacitated. In the case at bar, however, there is no medical evidence that Plaintiff requires more restroom breaks than what Defendant was willing to provide. In sum, Plaintiff's request to go to the restroom more frequently due to his treatment for chronic high blood pressure does not render him "incapacitated," intermittently or otherwise, under the FMLA.

### 2. Retaliation

To establish a *prima facie* case of unlawful retaliation under the FMLA, Plaintiff must show that: (1) he availed himself of a protected right under the FMLA, (2) Defendant knew of his exercise of a protected right, (3) he was adversely affected by an employment decision made by Defendant, and (4) there was a casual connection between the exercise of the protected right and the adverse employment action. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001). Because Plaintiff was not entitled to leave under the FMLA, he did not avail himself of a protected right under the FMLA. Therefore, he cannot show that Defendant retaliated against him in violation of the FMLA.

For these reasons, Plaintiff's FMLA claims fail as a matter of law.

### C. ERISA

Section 510 of ERISA states: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled" under an employee benefit plan. 29 U.S.C. § 1140. In order to state a claim under § 510, the plaintiff must demonstrate through either direct or circumstantial evidence that the defendant had a "specific intent to violate ERISA ." *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). In the absence of direct evidence, the plaintiff can establish a *prima facie* case under § 510 by

showing the existence of "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Id.* Although it is not part of the *prima facie* case, a plaintiff must demonstrate a "causal link" between the adverse employment decision and the loss of benefits in order to establish a § 510 claim. *Id. See Mattei v. Mattei*, 126 F.3d 794, 808 (6th Cir. 1997) (requiring that to establish a violation of § 510, a plaintiff must produce evidence indicating a causal connection between a defendant's challenged action and its interference with the plaintiff's ability to receive an identifiable benefit).

Plaintiff alleges that Defendant violated ERISA by taking an adverse action against him because he "posed a threat of significantly greater usage of ERISA benefits." (Pl.'s Mem. in Response, p. 18). In support of this claim, Plaintiff asserts as follows: he was a participant in Defendant's health benefits plan, Defendant is a fully self-insured entity, he utilized that plan in the treatment of his chronic high blood pressure, he presents a significant risk to avail himself of significantly more benefits in the future, he was placed on medical leave, and there is a causal connection between his risk for significant future use of benefits and his placement on medical leave. Plaintiff asserts that, based on these circumstances, a jury could conclude that Defendant "acted as any insurance company would to eliminate and/or lessen its risk by getting Linebarger off of its insurance rolls at the earliest possible date." (Pl.'s Mem. in Response, p. 19) (citing *Jackson v. Service Engineering, Inc.*, 96 F. Supp.2d 873 (S.D. Ind. 2000) (finding that the plaintiff's ERISA and ADA claims survived summary judgment where a reasonable trier of fact could find that the defendant fired the plaintiff to remove the burden of future medical expenses)).

Plaintiff does not cite to any evidence showing that Defendant's decision to place Plaintiff on medical leave was motivated by an intent to reduce anticipatory benefits to be paid on

19

Plaintiff's behalf in the future.  Moreover, Plaintiff does not cite any evidence disputing the testimony of Mr. Bigler, who decided that Plaintiff would be placed on medical leave, that he had no access to nor knowledge of health care expenditures on behalf of Plaintiff.

Plaintiff's reference to *Jackson* is unavailing because the facts in that case are not analogous to the case at bar.  In *Jackson*, there was evidence that the employer considered escalating health care costs associated with the plaintiff in deciding to fire the plaintiff.  For example, the employer's president said in a meeting that something needed to be done about the health care costs associated with the plaintiff and his ailing wife, and the president had earlier indicated that termination of the plaintiff was an option to solve this problem.  *See id.* at 876-77. Here, there is no such evidence; consequently, Plaintiff's ERISA claim rests on speculation, which is not enough to get past summary judgment.  As previously observed by Judge Frost, if courts were to adopt Plaintiff's reasoning, "any employee who utilizes her employer's self-insured benefit plans and who is ultimately terminated could bring an ERISA discrimination claim on the theory that the employer 'may' have been motivated by a desire to reduce its medical benefits costs." *Wills v. Honda of America Mfg., Inc.*, No. 2:11-cv-717, 2011 WL 6934502, at *2 (S.D. Ohio Dec. 30, 2011) (finding such an allegation to be insufficient to withstand a motion to dismiss).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's ERISA claim.

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 49).

The Clerk shall remove Document 49 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

20

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**